IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PETER VLAMING,
          Plaintiff,

v.                                    Civil Action No. 3:19-cv-773

WEST POINT SCHOOL BOARD, et al.,
          Defendants.

## OPINION

From 2012 to 2018, Peter Vlaming taught French at West Point Public Schools. During a class exercise in 2018, Vlaming referred to John Doe,[1] a transgender male student, by female pronouns. Shortly thereafter, the West Point School Board ("the School Board") suspended Vlaming and ordered him to refer to Doe by male pronouns. When Vlaming refused, the School Board fired him.

Vlaming sued the School Board and three School Board members in their official capacities[2] in the King William County Circuit Court, alleging that the School Board violated the

---

[1] Doe, a minor, has moved to proceed as "John Doe" because of the significant privacy concerns this case implicates. Vlaming asks the Court to require Doe to proceed as "Student Doe." Essentially, Vlaming argues that, if the Court were to allow Doe to proceed as "John," the Court would be agreeing with the defendants' theory of the case. That argument lacks merit and makes little sense. Because the Court will remand the case, it will not reach the substance of the motion to intervene. Thus, Vlaming will suffer no prejudice if the Court grants Doe's motion. Further, Vlaming's position suggests that the Court cannot refer to Doe using pronouns at all without making a final decision about the case. It is more efficient to allow Doe to proceed under one name and by his preferred pronouns. Moreover, common sense dictates that a court's decision on a procedural motion neither suggests how it will rule on a dispositive motion nor prohibits a court from revisiting that decision should the parties proceed to trial. Finally, whether Doe has a right to identify as a male is not before the Court. Because Doe is a minor and this case raises significant privacy concerns associated with revealing Doe's name and initials to the general public, the Court will grant the motion for leave to proceed under a pseudonym in this Court.

[2] Laura Abel, Division Superintendent; Jonathan Hochman, West Point High School Principal; and Suzanne Aunspach, West Point High School Assistant Principal.

Virginia Constitution and other state laws by firing him. The defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, 1443, and 1446. Vlaming has moved to remand, arguing that the Court lacks jurisdiction because he has only asserted state law claims. Because the Court lacks subject matter jurisdiction over this case, it will remand this case to the King William County Circuit Court.[3]

## I. <u>BACKGROUND</u>[4]

In 2012, Vlaming began working as a French teacher at West Point High School. In May, 2018, the School Board appointed Vlaming as a salaried teacher for the 2018-2019 school year. Vlaming's contract guaranteed him at least 200 days of employment and monthly salary payments from September, 2018, to August, 2019.

Early in the 2018 school year, Vlaming met with Doe—a student who had recently transitioned from female to male—Doe's parents, and the school guidance counselor regarding Doe's transition. Because Doe wished to go by a traditionally male name and pronouns, Vlaming let his students pick a new name for his French class that semester. During class, Vlaming referred to Doe by his chosen name but avoided using pronouns. Outside of Doe's presence, however, Vlaming referred to Doe using pronouns that aligned with Doe's biological sex.

In late October, 2018, Doe, his parents, and school administrators spoke with Vlaming about using pronouns matching Doe's gender identity. Assistant Principal Suzanne Aunspach also gave Vlaming written guidance regarding the rights of transgender students. She warned Vlaming that he was potentially violating federal law and School Board policy by using pronouns that did

---

[3] Because the Court lacks subject matter jurisdiction over this case, it cannot rule on the motion to intervene. The Court, however, views this as a routine case of insubordination in which the student has no legitimate role.

[4] The Court recites the relevant facts as alleged in the complaint.

not match Doe's gender identity. Aunspach told Vlaming "that he should use male pronouns or his job could be at risk." (Compl. ¶ 78.) Vlaming explained that his conscience and religious beliefs prohibited him from using pronouns that do not match a person's biological sex. Aunspach warned Vlaming that failure to comply could lead to termination. Principal Jonathan Hochman told Vlaming that he would receive a formal letter of reprimand because he did not use pronouns matching Doe's gender identity.

During a class exercise on October 31, 2018, Vlaming used female pronouns to refer to Doe. After the incident, Doe withdrew from the class. On Hochman's recommendation, Superintendent Laura Abel placed Vlaming on administrative leave pending an investigation. On November 6, 2018, Vlaming received a reprimand and final warning letter, which treated his refusal to use male pronouns to refer to Doe as harassment or retaliation based on gender identity. On November 7, 2018, Abel ordered Vlaming to refer to Doe using pronouns matching his gender identity in all contexts or face termination, and prohibited Vlaming from avoiding the use of pronouns at all. Vlaming told Abel he could not comply with the order due to his religious beliefs. Abel recommended that the School Board fire him. At a public hearing on December 6, 2018, the School Board fired Vlaming and immediately stopped paying him.

On January 2, 2019, the School Board sent Vlaming a letter explaining that it fired him for violating its policies against discrimination and harassment and for failing to comply with Abel's, Hochman's, and Aunspach's orders. Vlaming contends that the School Board did not adequately develop its policies and investigation and reporting processes. He also alleges that it did not comply with its formal complaint, investigation, and appeals process before firing him.

Vlaming filed this suit in state court, asserting that the School Board's decision violated numerous rights guaranteed to him by the Virginia Constitution and the Virginia Code: (1) freedom

3

of speech (Counts I to III); (2) free exercise of religion (Counts IV to V); (3) due process (Count VI); and (4) freedom from governmental discrimination (Count VII). Vlaming also alleges that the School Board violated the Dillon Rule and the Virginia Code when it enacted non-discrimination policies that were more stringent than Virginia laws (Count VIII). Vlaming further contends that the defendants breached their employment contract with him (Count IX).

The defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, 1443, and 1446, asserting that the case involves federal questions related to Title IX and the U.S. Constitution. They also argue that the School Board's decision to fire Vlaming amounts to either an "act under color of authority derived from any [l]aw providing for equal rights" or a "refus[al] to do any act on the ground that it would be inconsistent with such law." (Dk. No. 1, ¶ 7); *see* 28 U.S.C. § 1443(2). Vlaming contends that the defendants have improperly removed the case.

## II. DISCUSSION

### A. *Motion to Remand*

In support of federal jurisdiction, the defendants argue that (1) the complaint raises a federal question pursuant to § 1331, and (2) Title IX provides a basis for jurisdiction pursuant to § 1443(2). Vlaming moves to remand, arguing that the Court lacks jurisdiction over this case.[5]

---

[5] The defendants did not remove this case based on diversity jurisdiction, and diversity jurisdiction does not apply because Vlaming, a Virginia citizen, has sued Virginia citizens. *See* 28 U.S.C. § 1332.

*1. Section 1331*

*a. Legal Standard*

Federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Typically, cases arise under § 1331 when federal law creates the cause of action. *See Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986). In a "slim category" of cases, *Gunn v. Minton*, 568 U.S. 251, 258 (2013), federal courts have jurisdiction over cases in which state law supplies the cause of action, but "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 28 (1983). "Under the longstanding well-pleaded complaint rule, . . . a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). A court cannot base its jurisdiction on a defense or counterclaim. *Id.*

"The 'mere presence of a federal issue in a state cause of action' is not enough to confer jurisdiction." *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (quoting *Merrell Dow*, 478 U.S. at 813). A defendant must show that the "state-law claim . . . (1) necessarily raise[s] a federal issue" that is "(2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 379 (internal quotations omitted). The case must meet all four requirements under § 1331 for a federal court to have jurisdiction over the case. *See Pressl v. Appalachian Power Co.*, 842 F.3d 299, 303 (4th Cir. 2016). The removing party bears the burden of establishing jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Courts must "construe removal jurisdiction

strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (quoting *Mulcahey*, 29 F.3d at 151).

First, to "necessarily raise" a federal issue, it must be "essential to resolving a state law claim, meaning that '*every* legal theory supporting the claim requires the resolution of a federal issue.'" *Burrell*, 918 F.3d at 383 (quoting *Dixon*, 369 F.3d at 816). Courts "look only to the necessary elements of the [plaintiff's] causes of action to determine whether they raise federal questions under § 1331." *Id.* at 382. They do not consider "affirmative defenses that might be anticipated." *Id.* A case does not arise under federal law if the plaintiff "can establish all the necessary elements entirely independently of federal law." *Id.* "[S]o long as even one theory for each of the [plaintiff's] claims does *not* require interpretation of federal law, resolution of the federal-law question is not necessary to the disposition of their case." *Id.* at 383 (quotations omitted).

Second, an "actually disputed" issue "really and substantially involves a dispute or controversy respecting the validity, construction, or effect of [federal] law." *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912). Practically speaking, "if a federal issue does exist, it is 'actually disputed.'" *Va. Horsemen's Benevolent & Protective Ass'n, Inc. v. Colonial Downs, L.P.*, No. 3:17-cv-133-MHL, 2017 WL 3976291, at *4 n.8 (E.D. Va. Sept. 8, 2017).

Third, "the crux of what makes a question 'substantial' for § 1331 purposes is that it is 'importan[t] . . . to the federal system as a whole,' and not just to the 'particular parties in the immediate suit.'" *Burrell*, 918 F.3d at 385 (quoting *Gunn*, 568 U.S. at 260) (alteration in original). "[A] 'substantial' question generally will involve a 'pure issue of law,' rather than being 'fact-bound and situation-specific.'" *Id.* (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)). "[E]ven a strong interest in uniformity of results is not enough to make

6

a federal question 'substantial.'" *Id.* (quoting *Merrell Dow*, 478 U.S. at 815-16). Rather, a substantial issue is "dispositive of the case" and "controlling in numerous other cases." *Empire HealthChoice Assur.*, 547 U.S. at 700.

"The classic example . . . is a federal question regarding the constitutionality or construction of a federal statute." *Burrell*, 918 F.3d at 385 (quotations omitted). Further, a substantial question may arise when "the action of a[] federal department, agency, or service" triggers the litigation. *Empire Healthchoice Assur.*, 547 U.S. at 700. A substantial defense—even one that might set precedent "affect[ing] non-parties to [the] case"—does not satisfy this prong. *See Burrell*, 918 F.3d at 386.

Finally, a defendant must show "that removal of th[e] state-law case and the multitude of cases just like it would be consistent with the 'congressionally approved balance of federal and state judicial responsibilities.'" *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). This occurs when the issue does not "materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 319. A complaint that does not raise a substantial federal issue also fails to satisfy the fourth requirement. *See Burrell*, 918 F.3d at 386.

### b. Application

#### i. Title IX

The defendants have removed this case based on Title IX, arguing that Vlaming bases all of his claims "on the legal submission that his treatment of a transgender student did not constitute discrimination under Title IX and that his purported rights under state law are superior to the

student's rights under Title IX." (Dk. No. 1 ¶ 16.) The defendants also assert that Counts VIII and IX[6] turn on whether Title IX prohibits discrimination based on gender identity.

Vlaming's complaint includes some allegations that his conduct did not constitute harassment. (Compl. ¶¶ 172-81.) But Vlaming does not raise claims under Title IX. Instead, he asserts that the Board's policies do not comport with Virginia law. Thus, the defendants' generalized argument that Vlaming's complaint on the whole raises Title IX issues does not establish that the Court has jurisdiction over this case. *Cf. Burrell*, 918 F.3d at 384 (explaining that the Court must resolve any doubt about federal jurisdiction against the defendants); *Vaden*, 556 U.S. at 60 ("Federal jurisdiction cannot be predicated on an . . . anticipated defense.").

With regard to Count VIII, the Dillon Rule "states that municipal governments and other local governing bodies have only those powers which are expressly granted to them by the state legislature and those powers fairly or necessarily implied from these expressly granted powers." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 698 (E.D. Va. 2004). When applying the Dillon Rule, courts "first examine the plain terms of the legislative enactment to determine whether the General Assembly expressly granted a particular power to the municipal corporation." *Marble Techs., Inc. v. City of Hampton*, 279 Va. 409, 418, 690 S.E.2d 84, 88 (2010). If the General Assembly did not expressly grant the municipal corporation that particular power, courts must "determine whether the power . . . is necessarily or fairly implied from the powers expressly granted by the statute." *Id.* (alteration in original). To imply a particular power, the legislature must have "intended that

---

[6] In Count VIII, Vlaming asserts that the defendants violated the Dillon Rule and § 15.2-975 of the Virginia Code. (Compl. ¶¶ 293-99.) Count IX is Vlaming's breach of contract claim. (*Id.* ¶¶ 300-04.)

the grant of the express also would confer the implied." *Id.* Courts must analyze the legislative

intent of the General Assembly, giving plain meaning to the words used. *Id.*

Vlaming asserts that the defendants have violated the Dillon Rule as applied to Virginia

Code § 15.2-965. That section provides,

> A. Any locality may enact an ordinance, not inconsistent with nor more stringent *than any applicable state law*, prohibiting discrimination in housing, employment, public accommodations, credit, and education on the basis of race, color, religion, sex, pregnancy, childbirth or related medical conditions, national origin, age, marital status, or disability.
>
> B. The locality may enact an ordinance establishing a local commission on human rights which shall have the powers and duties granted by the Virginia Human Rights Act (§ 2.2-3900 et seq.).

Va. Code. Ann. §15.2-965 (emphasis added).

Vlaming argues that § 15.2-965 does not classify "gender identity" as a protected class.[7]

(Compl. ¶ 297.) Vlaming, therefore, asks the Court to determine the scope of a Virginia statute

that does not allow policies more stringent than "any applicable state law" prohibiting certain types

of discrimination. § 15.20965(A). He does not ask the Court to decide whether the statute

adequately aligns with Title IX. Although Title IX may inform the analysis, a court is not required

to decide the scope of § 15.2-965 on federal grounds.[8] *See Burrell*, 918 F.3d at 383.

---

[7] The Virginia Legislature recently amended § 15.2-965 to include ordinances prohibiting discrimination based on gender identity. The state court is in the best position to decide what effect, if any, an amendment to a Virginia code provision has on this claim.

[8] The defendants highlight that the complaint quotes the School Board's non-discrimination policy, which refers to several different federal statutes and regulations, including 34 C.F.R. § 106.9 (governing the dissemination of the Title IX policy). (*See* Dk. No. 1-2, at 79.) The defendants ignore, however, that the policy also relies on various Virginia Code provisions, including the Virginia Human Rights Act. *See* Va. Code Ann. §§ 22.1-291.4, 2.2-3900, 2.2-3901, 2.2-3902.

With regard to Count IX, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). The defendants contend that a court must first decide whether Title IX prohibits discrimination based on gender identity or a student's transgender status before it can decide whether the defendants lacked the authority to fire Vlaming. Put another way, the defendants say that Title IX's ban on discrimination establishes that they had legal authority to fire Vlaming. But that is a defense, not a necessary element of the breach of contract claim. A defendant cannot remove a state law case under § 1331 based on a federal defense. *Burrell*, 918 F.3d at 381. Rather, "[t]he state court in which the . . . suit was lodged is competent to apply federal law, to the extent it is relevant, and would seem best positioned to" determine this traditionally state-law claim. *Empire Healthchoice Assur.*, 547 U.S. at 701. Thus, Vlaming's complaint does not necessarily raise a federal issue under Title IX.

*ii. Constitutional Claims*

The defendants also contend that the Court has jurisdiction over Vlaming's Virginia free speech (Counts I to III) and due process claims (Count VI) because those provisions of the Virginia Constitution are coextensive with the U.S. Constitution. The Virginia Due Process Clause provides

> [t]hat no person shall be deprived of his life, liberty, or property without due process of law; that the General Assembly shall not pass any law impairing the obligation of contracts; and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged, except that the mere separation of the sexes shall not be considered discrimination.

Va. Const. art. I, § 11, cl. 1.

10

The Virginia free speech clause provides

[t]hat the freedoms of speech and of the press are among the great bulwarks of liberty, and can never be restrained except by despotic governments; that any citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; that the General Assembly shall not pass any law abridging the freedom of speech or of the press, nor the right of the people peaceably to assemble, and to petition the government for the redress of grievances.

*Id.* art. I, § 12.

The defendants argue that, due to the coextensive nature of those clauses, the Court's analysis necessarily turns on federal law. They also argue that Vlaming relies on federal law in his complaint because he cites Supreme Court decisions under his free speech counts.

### *Necessarily Raised*

The free speech and due process clauses under the Virginia Constitution are coextensive with the U.S. Constitution.[9] Those protections under the Virginia Constitution, therefore, do not extend beyond the scope of the protections under the U.S. Constitution. *See Elliott*, 267 Va. at 473, 593 S.E.2d at 269. Further, courts apply the same analysis to both federal and Virginia constitutional claims even though the claims "arise under different sources of constitutional law." *Willis v. City of Va. Beach*, 90 F. Supp. 3d 597, 607 (E.D. Va. 2015). Accordingly, courts may look to federal constitutional law when deciding Virginia constitutional claims. *See id.*; *Elliot*, 267 Va. at 474, 593 S.E.2d at 269.

The defendants, however, conflate the *ability* of a state court to use federal law to decide state constitutional claims with a *requirement* that the court apply federal law to the state

---

[9] *See Shivaee v. Commonwealth*, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005) ("Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis will apply to both."); *Elliott v. Commonwealth*, 267 Va. 464, 473–74, 593 S.E.2d 263, 269 (2004) ("Article I, § 12 of the Constitution of Virginia is coextensive with the free speech provisions of the federal First Amendment.").

constitutional claims. The defendants rely on cases in which the Court considered both federal and state law, but those cases did not involve exclusively state law constitutional claims.[10] The defendants also fail to cite any authority establishing that Vlaming could not succeed on his due process or free speech claims on exclusively state law grounds.

The defendants also urge the Court to adopt the Supreme Court's reasoning regarding appellate jurisdiction over state court decisions. That argument is unpersuasive because appellate jurisdiction in those cases involves considering the laws on which a state court actually based its decision—a retrospective analysis. *See, e.g., Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 106 (2003). Here, the court must consider the laws on which a state court could base its decision—a prospective consideration.[11] Simply put, the defendants have not shown that a court cannot decide this case on state law grounds, and the Court cannot speculate that a state court will rely on federal law to resolve this lawsuit.

---

[10] *See Willis*, 90 F. Supp. 3d at 607 ("[T]he Complaint allege[s]. . . that the Plaintiffs were disciplined in violation of their right to free speech, guaranteed by Article I, Section 12 of the Virginia Constitution, and by the First Amendment to the United States Constitution." (footnote omitted)); *Key v. Robertson*, 626 F. Supp. 2d 566, 583 (E.D. Va. 2009) ("[P]laintiff's [free speech] claim under . . . the Virginia state constitution . . . fail[s] for the same reasons that his First Amendment claim fails, as discussed above."); *Lee v. York Cty. Sch. Div.*, 418 F. Supp. 2d 816, 834-35 (E.D. Va. 2006), *aff'd*, 484 F.3d 687 (4th Cir. 2007) (holding that, because the plaintiff's free speech and due process claims under the U.S. Constitution failed, they also failed under the Virginia Constitution); *Davison v. Loudoun Cty. Bd. of Supervisors*, No. 1:16-cv-932 (JCC/IDD), 2017 WL 1929406, at *3 (E.D. Va. May 10, 2017), *aff'd sub nom. Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (noting that the plaintiff's claims under the federal and Virginia Constitutions were identical, so they did not require separate analyses).

[11] *Cf. Michigan v. Long*, 463 U.S. 1032, 1041 (1983) ("If a state court chooses merely to rely on federal precedents as it would on the precedents of all other jurisdictions, then it need only make clear . . . that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached."); *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 568 (1977) ("Had the Ohio court rested its decision on both state and federal grounds, either of which would have been dispositive, we would have had no jurisdiction. But the opinion, like the syllabus, did not mention the Ohio Constitution, citing instead this Court's First Amendment cases as controlling." (citations omitted)).

Further, the defendants rely on *Bracey v. Board of Education of Bridgeport*. 368 F.3d 108 (2d Cir. 2004). In *Bracey*, the U.S. Court of Appeals for the Second Circuit considered whether it had subject matter over a claim arising under a Connecticut statute that explicitly relied on rights guaranteed by the federal and state constitutions. The Second Circuit determined that the district court had jurisdiction because the plaintiff alleged "on the face of his well-pleaded complaint that the Board violated his rights as established" under either constitution. *Id.* at 116. Here, Vlaming has not asserted a cause of action under the U.S. Constitution. Further, no court in this Circuit has relied on *Bracey* for the proposition that a plaintiff has necessarily raised a federal issue within a state law claim.

Finally, Vlaming cites some federal cases in his complaint to support his state law claims. The fact that a complaint refers to federal law, however, does not mean that it necessarily raises a federal issue. *See Virginia ex rel. Hunter Labs, L.L.C. v. Virginia*, 828 F.3d 282, 284, 287-88 (4th Cir. 2016). Accordingly, Vlaming's complaint does not necessarily raise a federal issue under his constitutional claims.

### *Substantiality and Federal-State Balance*

The defendants also have not shown that Vlaming raised substantial federal questions. Rather than identify a specific question that arises under Vlaming's constitutional claims, the defendants rely on the coextensive nature of the Virginia free speech and due process clauses. Here, however, a court must decide whether School Board-specific policies and actions violated Vlaming's state constitutional rights—a fact-bound outcome, not a "pure issue of law" that a federal court must settle "once and for all." *Empire HealthChoice Assur.*, 547 U.S at 700-01.

The defendants also argue that removal does not disrupt the federal-state balance. The defendants point out that Congress created a federal remedy for constitutional violations by

13

enacting 42 U.S.C. § 1983.  The fact that Vlaming could sue under § 1983 is not dispositive.  *See*

*Mulcahey*, 29 F.3d at 152.  Vlaming does not seek relief under § 1983.  Moreover, parties routinely

call on state courts to resolve state constitutional questions.  *Cf. Grable*, 545 U.S. at 315 ("[I]t will

be the rare state title case that raises a federal-law issue.").  Permitting a party to remove a case

because a plaintiff sued under a state constitutional provision that is coextensive of the federal

constitution would broadly expand the number of state cases a defendant could remove to federal

court.  *See Gunn*, 568 U.S. at 258 ("Where a claim finds its origins in state rather than federal

law[,] . . . we have identified a '*special and small category*' of cases in which arising under

jurisdiction still lies." (emphasis added)).  The relationship between the Virginia and U.S.

Constitutions, therefore, does not support federal question jurisdiction in this case.  Thus, the Court

lacks subject matter jurisdiction over Vlaming's claims under § 1331.

### 2. *Section 1443(2)*

28 U.S.C. § 1443 provides that

[a]ny of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.[12]

---

[12] The first clause applies "to federal officers and those acting under them."  *City of Greenwood v. Peacock*, 384 U.S. 808, 821 (1966).  The second clause, or the "refusal clause," applies to state officers only.  *Id.* at 824 n.22.

§ 1443. The defendants have removed this case pursuant to § 1443(2), relying on Title IX as a "law providing for equal rights." *See* § 1443(2). Vlaming, however, contends that § 1443(2) does not apply to this case for several reasons. Relevant here, he argues that § 1443(2) only applies to cases about rights related to racial equality.

The Supreme Court has previously limited § 1443(1)—a similar provision which applies when a party is denied or cannot enforce a federal right in state court—to cases involving racial equality. *See* § 1443(1); *see also Georgia v. Rachel*, 384 U.S. 780, 792 (1966) ("[T]he phrase 'any law providing for equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality."). The Fourth Circuit has similarly limited § 1443(1). *See, e.g., Wilkins v. Rogers*, 581 F.2d 399, 403 (4th Cir. 1978) ("Allegations of sexual discrimination are not cognizable under [§] 1443(1)."). Although the Supreme Court decided *Rachel* six years before Congress enacted Title IX, it has not overruled *Rachel* or expanded its interpretation of § 1443(1). *See, e.g., Johnson v. Mississippi*, 421 U.S. 213, 219 (1975).

The Fourth Circuit has not decided whether *Rachel* also applies to § 1443(2).[13] The defendants highlight that § 1443(1) applies to laws providing for equal *civil* rights, whereas § 1443(2) applies to any law providing for equal rights. Shortly before *Rachel*, however, the Fourth Circuit held that the refusal clause under § 1443(2) "was intended to enable state officers

---

[13] The Fourth Circuit recently considered whether a district court had properly remanded a case involving partisan gerrymandering under § 1443(2). *See Common Cause v. Lewis*, 956 F.3d 246 (4th Cir. Apr. 16, 2020). The court did not address whether § 1443(2) requires the conflict to arise from laws providing for racial equality. Instead, the court held that the legislative defendants did not have an enforcement role, as the refusal clause requires. *Id.* at 256. In any event, the allegations in *Common Cause* had a closer relationship to race than those in this case. Indeed, the defendants alleged that the "[p]laintiffs' desired remedies would separately create a conflict between state constitutional redistricting requirements and the Voting Rights Act and the Equal Protection Clause, given the close correlation between race and political affiliation in North Carolina." *Id.* at 251.

who refused to enforce discriminatory state laws in conflict with Section 1 of the Civil Rights Act of 1866 and who were prosecuted in the state courts because of their refusal to enforce state law, to remove their proceedings to the federal court." *Baines v. City of Danville*, 357 F.2d 756, 772 (4th Cir.), *cert. granted, judgment aff'd*, 384 U.S. 890 (1966) (per curiam). Moreover, this Court has concluded that claims removed under § 1443(2) "require redress specifically toward racial equality."[14]

Thus, because Vlaming has not raised issues related to racial equality, the defendants cannot remove this case pursuant to § 1443(2).

### B. Costs and Fees

Vlaming asks the Court to award him costs and fees resulting from the removal. 28 U.S.C. § 1447(c) allows a court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal" if the Court determines it lacks subject matter jurisdiction "at any time before final judgment." 28 U.S.C. § 1447(c). "There is no automatic entitlement to an award of attorney's fees." *Common Cause*, 956 F.3d at 256. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

---

[14] *Commonwealth of Va. v. El*, No. 3:15-cv-718, 2016 WL 3746376, at *4 n.8 (E.D. Va. July 12, 2016); *Commonwealth of Va. v. El*, No. 3:16-cv-128, 2016 WL 4507814, at *5 n.15 (E.D. Va. Aug. 26, 2016); *cf. Lee-Bautista v. Bautista*, No. 1:15-cv-987, 2015 WL 13064950, at *1 n.2 (E.D. Va. Aug. 31, 2015) ("Section 1443 requires a petitioner to show the denial of a right arising under federal law providing for specific civil rights stated in terms of *racial equality*." (quotations omitted)), *aff'd*, 633 F. App'x 148, 149 (4th Cir. 2016) (per curiam) ("The district court correctly concluded that removal was not proper pursuant to 28 U.S.C. § 1443 because Bautista had neither alleged nor demonstrated that 'the right allegedly denied . . . arises under a federal law providing for specific civil rights stated in terms of racial equality.'" (quoting *Johnson*, 421 U.S. at 219)).

At a minimum, the defendants' arguments regarding § 1443(2) justify denying Vlaming's request. Section 1443 is "a text of exquisite obscurity," and, as explained above, few cases have directly addressed the scope of § 1443(2). *Baines*, 357 F.2d at 759 (quotations omitted); *see also Common Cause*, 956 F.3d at 253. Indeed, neither the Supreme Court nor the Fourth Circuit has decided whether statutes such as Title IX fall under § 1443(2). "Far from taking a patently frivolous position, the [defendants] had an objectively reasonable—though . . . ultimately unsuccessful—basis for seeking removal." *Common Cause*, 956 F.3d at 257. Further, the defendants have "comprehensively briefed the issues arising from their removal, including with reference to a wide range of case law." *See id.* The defendants also removed the case within the statutorily required time limits and adhered to this Court's briefing schedule. *See id.* Thus, the Court declines to award Vlaming costs and fees associated with removal of this case.

### III. <u>CONCLUSION</u>

The Court does not minimize the interests that the parties and Doe have in the outcome of this litigation. Nor does it downplay the important protections that Title IX and the state and federal constitutions provide. But the Court cannot ignore the limits of its jurisdiction. Accordingly, pursuant to § 1447(c), the Court finds that it lacks subject matter jurisdiction over Vlaming's claims and will remand this case to the state court.

Because the Court lacks jurisdiction, it cannot rule on Doe's motion to intervene. Further, the Court will grant the motion to proceed pseudonymously to the extent Doe seeks to proceed as "John Doe" in any filings made in this Court.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 19 August 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge